Louis HUTCHISON, Gayle Reese, and RHR, Inc., Plaintiffs,

v.

KFC CORPORATION, Defendant.

No. CV–S–92–87–PMP (LRL).

United States District Court, D. Nevada.

July 20, 1992.

---

Guy E. Matthews, Gerald P. DeNisco, Matthews and Associates, Houston, TX, for plaintiffs.

Jeffrey H. Dasteel, Skadden, Arps, Slate, Meagher & Flom, Los Angeles, CA, for defendant.

## ORDER

PRO, District Judge.

Pending before this Court is Defendant's Motion to Dismiss (# 21), which was filed on March 23, 1992. On April 30, 1992, Plaintiffs filed their Opposition (# 26), and on June 1, 1992, Defendant filed a Reply (# 28).

## I. FACTS

In the late 1970's, Plaintiff Louis Hutchison ("Hutchison") allegedly developed the idea for "skinless fried chicken" to be sold in fast food restaurants. After initial consumer tests, Hutchison placed this new chicken product in seven (7) stores owned by RHR, Inc. in Las Vegas, Nevada. Hutchison and Plaintiff Gayle Reese ("Reese") claim to have treated the preparation of this product as confidential and a trade secret from its inception.

In 1983, Hutchison inquired whether KFC Corporation would be interested in acquiring the rights to this skinless chicken product. In late 1983 or early 1984, Hutchison attempted to contact Richard Molony ("Molony"), Senior Vice President for operations of KFC, to negotiate directly. In September, 1984, Molony met with Hutchison and Reese to discuss KFC obtaining the rights to this new skinless fried chick-en. In October, 1984, KFC retained Tony Wang ("Wang") to travel to Las Vegas, Nevada to meet with representatives of RHR and to evaluate the new chicken product. While in Las Vegas, Wang was allegedly shown how this skinless chicken product was prepared and cooked, as well as the equipment used in its preparation. Wang allegedly complimented the taste of the chicken and stated he would recommend KFC acquire the rights to the product so that it could be sold through KFC's franchises. At this meeting, Wang signed an agreement not to disclose any confidential information or trade secrets to any third parties.

In December, 1984, Hutchison and Reese met with Molony, Wang, and Richard Doyle ("Doyle"), another KFC representative, at the KFC offices in Louisville, Kentucky, where they presented their skinless chicken product to KFC. Certain confidential materials were allegedly presented at this meeting by Hutchison and Reese.

Shortly after returning to Las Vegas, Hutchison and Reese talked with Molony on the telephone. In this conversation, Molony allegedly stated that although he was personally interested in obtaining the product, he had no authority to make such a decision at that time.

In January, 1985, Doyle allegedly returned the confidential materials presented to KFC at the December meeting. He also allegedly stated that although the skinless chicken product had merit, such a product would not be compatible with KFC's operations at the time. Plaintiffs allegedly kept in touch with Molony throughout 1985, during which time Molony stated that he would try to arrange another meeting between RHR and KFC once the political climate at KFC was more favorable.

In May, 1985, Plaintiffs began negotiating a consulting agreement with Pizza Inn, Inc. ("Pizza Inn"). A contract was entered on December 16, 1985, in which Plaintiffs specifically excluded the skinless chicken product, allegedly because Plaintiffs believed that KFC was still had an interest in the product. Molony was informed that the chicken product was excluded from the

contract by telephone in 1986. Hutchison claims to have told Molony that the chicken product was being saved for KFC based on his representations.

KFC held a convention in Las Vegas in January, 1988, at which time Hutchison met with Molony. Molony allegedly told Hutchison that he would meet with him and other representatives of RHR to attempt to reach an agreement whereby KFC would sell the skinless chicken product through its franchises. No meeting ever took place.

KFC began to market its own skinless chicken product around early 1991.

Plaintiffs state seven causes of action against Defendant KFC, including: (1) misappropriation and theft of trade secrets, (2) breach of confidential relationship, (3) breach of contract, (4) common law and constructive fraud, (5) loss of business opportunity, (6) unfair competition, and (7) unjust enrichment. Plaintiffs also seek a permanent injunction prohibiting Defendant from selling skinless fried chicken.

## II. DISCUSSION

Defendants bring a Motion to Dismiss all of Plaintiff's claims based on Rules 9(b) and 12(b)(6) of the Federal Rules of Civil Procedure. The Court addresses each of these issues separately.

Jurisdiction is founded on diversity of the parties. 28 U.S.C. § 1332. Therefore, this Court must apply Nevada's substantive law. *Erie Railroad Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

### A. Standard of Review: Rule 9(b)

■ Fraud must be pleaded with particularity. Fed.R.Civ.Proc. 9(b). The time, place, and manner of each fraudulent act must be alleged so that Defendant can prepare an adequate answer. *Bosse v. Cromwell Collier and MacMillan,* 565 F.2d 602, 611 (9th Cir.1977). *See also Lancaster Community Hospital v. Antelope Valley Hospital Dist.,* 940 F.2d 397, 405 (9th Cir.1991); *Semegen v. Weidner,* 780 F.2d 727, 735 (9th Cir.1985); *Gottreich v.*

*San Francisco Investment Corp.,* 552 F.2d 866 (9th Cir.1977).

### 1. *Common Law and Constructive Fraud*

Although Plaintiffs reference various statements Defendants made to them, Plaintiffs do not specifically refer to the representations upon which they claim to have relied when they refused to market their skinless chicken product to Pizza Inn. In light of the more stringent pleading requirements for fraud, Plaintiffs must restate their causes of action for fraud more particularly by stating the time, place, and manner of the alleged fraudulent acts. Therefore, Plaintiffs will be granted leave to file an Amended Complaint to plead the claims of fraud with sufficient particularity.

### B. Standard of Review: Rule 12(b)(6)

■ A defendant may move to dismiss a claim for failure to state a claim upon which relief can be granted. Fed.R.Civ. Proc. 12(b)(6). A complaint may only be dismissed if there is no set of facts within the complaint's framework that would entitle the complainant to relief. *Conley v. Gibson,* 355 U.S. 41, 45, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957).

### 1. *Misappropriation of Trade Secrets*

The elements for pleading a misappropriation of a trade secret can be derived from the Uniform Trade Secrets Act, which Nevada has adopted. *See* Nev.Rev.Stat. ch. 600A, et seq. In the Act, misappropriation means:

(a) Acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means;

(b) Disclosure or use of a trade secret of another without express or implied consent by a person who:

(1) Used improper means to acquire knowledge of the trade secret;

(2) At the time of disclosure knew or had reason to know that the knowledge of the trade secret was:

(I) Derived from or through a person who had used improper means to acquire it;

(II) Acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use; or

(III) Derived from or through a person who owed a duty to a person seeking relief to maintain its secrecy or limit its use....

Nev.Rev.Stat. ch. 600A.030.

■ Although Nevada courts have not done so, Oregon has addressed the requirements for misappropriation of a trade secret under the Uniform Trade Secrets Act. This Act has uniform application and construction. Nev.Rev.Stat. ch. 600A.020. As stated in *Holland Dev. v. Manufacturers Consultants,* the requirements for misappropriation of a trade secret include:

... (1) a valuable commercial design; (2) a confidential relationship between the party asserting trade secret protection and the party who disclosed the information; and (3) the key features of the design that were the creative product of the party asserting protection....

81 Or.App. 57, 62, 724 P.2d 844, 847 (1986); *Lamb–Weston, Inc. v. McCain Foods, Ltd.,* 941 F.2d 970, 972 (9th Cir.1991).

■ Based on the above, it is clear that Plaintiffs have not properly pleaded this cause of action. In their Complaint, Plaintiffs do not state that KFC is using their trade secret without Plaintiffs' consent. Plaintiffs also do not demonstrate that Defendant allegedly uses the same method as Plaintiffs to prepare skinless fried chicken. Plaintiffs merely assert that much to their surprise, KFC began to market its own skinless chicken product in early 1991. Furthermore, Plaintiffs have failed to show that they had a confidential relationship with Defendant, other than the agreement made with Wang in 1984.

Defendant's motion to dismiss with respect to the misappropriation of trade secrets will therefore be granted without prejudice to enable Plaintiffs to file an Amended Complaint to properly plead a claim under the Uniform Trade Secrets Act.

### 2. *Breach of Contract*

Plaintiffs allege, "Defendant agreed not to use the trade secrets of Plaintiff for its own purpose for profit. Defendants breached this contract." Plaintiff's Complaint (# 1), p. 9, para. 25. Contractual remedies can be sought in conjunction with remedies provided by the Uniform Trade Secrets Act. Nev.Rev.Stat. ch. 600A.090. Plaintiffs' breach of contract theory is based on the alleged misappropriation of a trade secret. As stated above, Plaintiffs have not sufficiently pleaded their causes of action for misappropriation and theft of a trade secret. Since their breach of contract theory is based upon correctly pleading these two causes of action, Plaintiff's action for breach of contract will similarly be dismissed without prejudice.

### 3. *Unjust Enrichment, Breach of Confidential Relationship, and Unfair Competition*

■ Plaintiffs claim that Defendant misappropriated their trade secret for skinless fried chicken, and this resulted in unjust enrichment, unfair competition, and breach of a confidential relationship. Defendants argue that these three claims by Plaintiffs are duplicative of Plaintiffs' statutory claim under the Uniform Trade Secrets Act.

The Uniform Trade Secrets Act "displaces conflicting tort, restitutionary, and other law of this state providing civil remedies for misappropriation of a trade secret." Nev.Rev.Stat. 600A.090. Contractual remedies, whether or not they are based on misappropriation, and other civil remedies which are not based upon misappropriation of a trade secret are excluded. *Id.*

Plaintiff's unjust enrichment and unfair competition arguments are based on the allegations that Defendant misappropriated their trade secret for skinless fried chicken. Since these two claims are duplicative of the civil remedies Plaintiffs claim for the alleged misappropriation of their trade secret, they are displaced by the Uniform Trade Secrets Act and will be dismissed.

Plaintiffs do not cite, and this Court cannot find, any Nevada case law which recognizes a cause of action for breach of a confidential relationship. Alternatively, even if such cause of action existed in Nevada, the essence of Plaintiffs' claim relates primarily to Defendant's alleged misappropriation of their trade secret. As with the other torts of unjust enrichment and unfair competition, this claim will be displaced by Nevada law. *Id.* Accordingly, Plaintiffs' claim for breach of confidential relationship will also be dismissed.

### 4. *Loss of Business Opportunity*

■ The elements of the tort of wrongful interference with a prospective economic advantage are:

(1) a prospective contractual relationship between the plaintiff and a third party; (2) the defendant's knowledge of this prospective relationship; (3) the intent to harm the plaintiff by preventing the relationship; (4) the absence of a privilege or justification by the defendant; and, (5) actual harm to the plaintiff as a result of the defendant's conduct.

*Leavitt v. Leisure Sports, Inc.,* 103 Nev. 81, 88, 734 P.2d 1221, 1225 (1987); *Las Vegas–Tonopah–Reno Stage v. Gray Line,* 106 Nev. 792 P.2d 386, 388 (1990).

Plaintiffs do not demonstrate in their Complaint that Defendant was cognizant of their dealings with Pizza Inn and intended to disrupt this relationship. Accordingly, Defendant's motion to dismiss will be granted as to this claim.

### ORDER

IT IS THEREFORE ORDERED that Defendant's Motion to Dismiss (# 21) will be granted to the extent that Plaintiffs' Complaint is hereby dismissed without prejudice.

IT IS FURTHER ORDERED that Plaintiffs are granted leave to file an Amended Complaint consistent with this Order on or before August 14, 1992.

IT IS FURTHER ORDERED that Plaintiffs' request for a permanent injunction is denied.